**BARTELS v. JOHN HANCOCK MUT. LIFE INS. CO. et al.**

No. 8368.

Circuit Court of Appeals, Fifth Circuit.

Dec. 22, 1938.

Rehearing Denied Jan. 23, 1939.

814

HOLMES, Circuit Judge, dissenting.

———◇———

T. E. Mosheim, of Seguin, Tex., for appellant.

L. M. Bickett, of San Antonio, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The case concerns the proper application of Subsection (s) of Sect. 75 of the Bankruptcy Act, 11 U.S.C.A. Sect. 203(s)'. Benno Bartels as a farmer applied for ·a composition and extension of his debts and his petition was approved and referred to the Conciliator. At the creditors' meeting Bartels expressed a willingness to pay in full if given time, and proposed to work his farm himself and to apply the proceeds of the crops to his debts, selling and paying over at once property not needed on the farm. Theretofore he had let it out on shares because he had hurt his back, and poor crops had been made. He came to an agreement with his unsecured creditors but John Hancock Mutual Life Insurance Company held a mortgage on the farm for $6,000 principal, interest on which was three years in arrears, and this debt was a majority in amount of all his debts. This creditor required present payment of all arrearages, and since Bartels could not arrange cash therefor he could make no acceptable proposal. He then amended his petition and prayed to be adjudged a bankrupt under Subsection (s). On Jan. 10, 1938, he was so adjudged and the case re-referred to the Conciliator as referee. Bartels appears to have continued in possession of the farm, but under what terms does not appear. About ten weeks later the Insurance Company moved, not to have its security sold, but that the adjudication in bankruptcy be set aside and all proceedings dismissed. The bankrupt resisted this. On a hearing the judge held there was no reasonable probability of the mortgaged property being sold for enough to give the debtor any substantial equity, and that accordingly there was no reasonable probability of his financial rehabilitation. The motion was granted, the adjudication set aside and the cause dismissed, largely on the authority of our decision in Baxter v. Savings Bank of Utica, 5 Cir., 92 F.2d 404. Other decisions from the Circuit Court of Appeals cited to support the judgment are: In re Borgelt, 7 Cir., 79 F.2d 929, approving and affirming D.C., 10 F. Supp. 113; Knotts v. First Carolinas Joint Stock Land Bank, 4 Cir., 86 F.2d 551; and Massey v. Farmers & Merchants Bank, 4 Cir., 94 F. 2d 526. Of these the first rested on two grounds, that the debtor had not made a good faith offer, and there were no assets to be administered. The second was really decided on the erroneous ground that Subsection (s) was unconstitutional. The third squarely took the position that Subsection (s) cannot be invoked unless the initial offer made to creditors has come up to certain rather vague standards which would show good faith.

Confusion has arisen, we think, touching the way in which Subsection (s) fits into the scheme of bankruptcy, as to when

the stay provided therein may be denied, and how security holders are to have their rights preserved. Farmers were favored in the original Bankruptcy Act in that while they might voluntarily go into bankruptcy, they could not be forced in. This is continued in proceedings under Section 74(*l*) 11 U.S.C.A. Sect. 202(*l*). Section 75 deals only with farmers, and as stated at its end, Subsection (s) (6), 11 U.S.C.A. § 203(s) (6) is emergency legislation, limited originally to five years, and not to be applied where the judge finds no emergency to exist locally. The emergency was the great economic depression which in 1933 had rendered farming unprofitable, and farm lands unsalable for their normal value. To force the sale of farms under such circumstances would be a hardship on the farmer who on a basis of normal values was really solvent, and would cause those who were insolvent to lose their means of livelihood, and probably in great numbers go to swell the ranks of the unemployed and those needing public relief. The surplus value inherent in the farms would, after economic revival, accrue to speculative buyers, and aggravate the social evil of the rich becoming ever richer and the poor poorer. Creditors as a rule do not wish farms, and would under safe arrangements prefer to extend time or to compromise their debts, if it would enable their farmer debtor to continue in business and pay them. Section 75 is intended to serve all these interests while seeking mainly to help distressed farmers so far as that may rightly be done. Its benefits are expressly extended both to those who cannot meet their debts as they mature, but are solvent in a bankruptcy sense, and to those who are insolvent. Subsection (c), 11 U.S.C.A. § 203(c).

The applicant under Section 75 is at first not a bankrupt, but a debtor. The aid of the court is first extended to secure a voluntary adjustment with his creditors, both secured and unsecured, which will enable him to continue to farm, the will of a majority in number and amount controlling the minority. If this adjustment cannot be accomplished, the farmer may wholly drop the matter, or he may turn to Subsection (s) and "amend his petition * * * asking to be adjudged a bankrupt." When so adjudged he becomes a bankrupt under the bankruptcy law, required to surrender his property except exemptions, and entitled to ask a discharge from his debts. But Subsection (s) introduces for a farmer who timely invokes it very important changes in the applicable bankruptcy law. Instead of immediately surrendering his property, and especially his farm and equipment, he may retain them, or so much as he requests, for three years, paying a reasonable rent for them, and may even at the appraised value redeem them on terms fixed by the court, the redemption money then becoming part of the estate to be distributed in bankrupty in place of the property itself. All this, as respects unsecured creditors, has been considered to be within the bankruptcy power of the federal government. But secured creditors whose liens antedate the law have as to their security vested rights which must be effectuated. The present Subsection (s) has been construed as sufficiently flexible to care for them. Wright v. Vinton Branch Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. A creditor with a mortgage on the farm may be able to force a sale which will defeat a rehabilitation of the farmer which might otherwise have been accomplished. And, although there be no secured debts, or they are not urgently pressed, rehabilitation may appear to be impracticable, or pending it the farmer may breach his obligations, and then ordinary bankruptcy procedure may be ordered to go forward as Subsection (s) (3) declares. In neither case under a proper construction of Section 75 is the entire proceeding to be dismissed. On the contrary, when the rehabilitation sought by Subsection (s) fails, the farmer is still a bankrupt, and his estate is to be administered and his debts discharged as in other cases of voluntary bankruptcy. "In proceedings under this section [Section 75] except as otherwise provided herein, the jurisdiction and powers of the courts, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition, asking to be adjudged a bankrupt, was filed with the clerk * * *." Subsection (n), 11 U. S.C.A. § 203 (n). Much more is the general bankruptcy law to be applied after an adjudication as a bankrupt has been actually made under Subsection (s). The only mention of dismissing the proceedings which we find is in Subsection (*l*), 11 U.S.

C.A. § 202 (*l*), when a composition has been carried out, or optionally when an extension proposal has been confirmed.

The courts have spoken of a lack of "good faith" in invoking Section 75 as a cause for dismissing the whole proceeding, and some countenance has been given the idea in a foot-note to the opinion in the case of Wright v. Vinton Bank, supra. We do not understand it to be a part of the court's opinion. The note mistakenly states that good faith is made a requirement of the initiation of a proceeding under Sect. 75. That requirement appears in Sect. 74 (a), 11 U.S.C.A. § 202(a). Section 75 nowhere mentions initial "good faith" as a prerequisite to invoking Subsection (s), or going through bankruptcy if rehabilitation under that Subsection fails. The good faith of the offer and acceptance is to be enquired into by the court before confirming a composition or extension accepted by the majority of creditors, Subsection (i), 11 U.S.C.A. § 203(i) and that is the only mention of good faith in Sect. 75. If the farmer is desirous of continuing to farm and is willing to give his creditors their full rights in his property as the law fixes them hoping to obtain from them such extension or compromise as will enable him to work out, that we think is all the good faith necessary. That he has no equity in his property but is actually insolvent is no bar. The statute says so in Subsection (c). That his creditors refuse to compromise or give time so as to enable him to farm, merely gives him the right to proceed in bankruptcy under Subsection (s) and thus to try conclusions with the judge. That Bartels in this case had no plan to present to his creditors except to offer to go to work personally on the farm / with his grown son, and apply presently to his secured debt what he could raise by selling some mercantile property and vacant lots, hoping to pay all in full finally, does not require the dismissal of his proceedings. His unsecured creditors were actually content to adopt the plan. The secured creditor whose debt was a majority in amount was not content. Bartels thereupon rightly asked adjudication as a bankrupt, invoking Subsection (s). His secured creditor had the right thereafter to ask the court for a sale or other disposition of the security, if the delay and rentals fixed under Subsection (s) would impair his vested rights. This he did not do. He had no right to set aside the adjudication and dismiss the proceeding. If there is no substantial equity,

actual or potential, above the mortgage debt reasonably to be saved, a sale of the farm may be ordered, defeating of course rehabilitation, but the adjudication would stand and administration in bankruptcy continue. It was error in this case to set aside the adjudication and dismiss the proceedings.

What we said about Subsection (s) in Dallas Land Bank v. Davis, 5 Cir., 83 F.2d 322, we see no occasion to modify. In Baxter v. Savings Bank of Utica, 5 Cir., 92 F.2d 404, the disposition of the case was correct, but some of the language touching initial good faith as a prerequisite to invoking Subsection (s), 11 U.S.C.A. § 203 (s), and indicating that the adjudication under Subsection (s) should have been set aside to make way for another adjudication we now think was inaccurate. The adjudication under Subsection (s) is good if the farmer never makes any application to retain possession of his property and for its appraisal and a stay of all other proceedings. The language of the statute shows that such application is optional, and the option may be lost by failure to assert it at the times the statute names. "Such farmer may, at the same time, or at the time of the first hearing, petition the court that all of his property * * * be appraised," etc. If no such petition is made, or if later the benefits of possession and stay are defeated, the adjudication stands as a voluntary adjudication in bankruptcy. Appropriate proceedings ought to follow.

The judgment rendered on the motion of the Insurance Company is reversed and the case ordered reinstated for further proceedings not inconsistent with this opinion.

HOLMES, Circuit Judge (dissenting).

The district court found that there was no reasonable hope of appellant rehabilitating himself with the property involved in this estate, and that the petition was not filed in good faith. The record amply supports this finding, and the majority opinion does not question it. Nevertheless, the majority opinion holds that the court was without power to dismiss the proceedings.

In sustaining the constitutionality of the act, the Supreme Court held that the proceeding could be maintained only as a bona fide effort on the part of the debtor to rehabilitate himself, and that this was without regard to any provision of the act specifically requiring good faith. In a footnote to its opinion, it says: "Relief under

section 75 (s) may be obtained only by one who has made a bona fide attempt, and has failed, to effect a composition under section 75 (a) to (r)." Wright v. Vinton Branch, 300 U.S. 440, 462, 57 S.Ct. 556, 562, 81 L.Ed. 736, 112 A.L.R. 1455. It further states that the proceedings will be halted at the outset if the debtor is beyond hope of rehabilitation. Such a pronouncement, when made the basis for a holding that an enforced delay in favor of one class of litigants for a period of three years does not violate the due-process clause of the Constitution, should not be disregarded.

Good faith has been defined as lack of pretense. A proceeding such as this, without hope of rehabilitation, is a mere pretense. The majority says that, because there is a field of judicial action within which the court may move and act, the power to withhold its process in aid of a pretense is denied to it, and that, as a mere ministerial functionary, it must proceed only upon such motions and petitions as are expressly provided for in the act. This is not within the usual concept of a judicial tribunal. The Supreme Court held otherwise, and pointed out that the practical administration of the section in the lower courts already gave ample evidence of substantial protection to creditors. For these reasons, I think the judgment of the district court should be affirmed.

The decision of this case is unfortunate in view of our decision in In Matter of John Beverly Henderson, Debtor, 5 Cir., 100 F. 2d 820, this day decided. The two cases were submitted at the same term of court and were considered together; but, owing to the fact that exactly the same judges did not sit in both cases, a different result is reached.

### On Motion for Rehearing.

#### PER CURIAM.

It is ordered that the petition for rehearing in the above numbered and entitled cause be, and it is hereby, denied.

HOLMES, Circuit Judge (dissenting).

I think the petition should be granted. The point of disagreement between us is not whether appellant is entitled to be adjudged a bankrupt. That was decided in Baxter v. Savings Bank of Utica, 5 Cir., 92 F.2d 404, which apparently is approved by three of the five judges of this circuit, and which is in accord with Massey v. Farmers & Merchants National Bank & Trust Company, 4 Cir., 94 F.2d 526, wherein certiorari was applied for by eminent counsel, and the application was afterward withdrawn prior to a ruling thereon by the Supreme Court. 303 U.S. 665, 58 S.Ct. 761, 82 L.Ed. 1122.

The real question at issue in this case is whether appellant is entitled to petition the court to allow him to retain possession of his property for a period of three years, during which it shall stay all judicial proceedings in any court, or under the direction of any official, against the debtor or any of his property; and whether he is entitled to invoke the other jurisdictional provisions of Section 75(s) of the Bankruptcy Act 11 U.S.C.A. § 203 (s).

No one denies that a farmer may become a voluntary bankrupt or that he may not be forced to become an involuntary one. Appellant has not petitioned for an adjudication as an ordinary bankrupt. There is nothing in the evidence to indicate that he desires any status in the bankruptcy court except that provided by subsection (s). If he does, no one may object, but he should not be entrapped, when he is seeking special relief under emergency legislation. This was the effect of our holding in the Baxter Case, in which no application for certiorari was made.

The question is, shall a debtor who prays for the beneficent provisions of subsection (s) be dealt with, under Section 22 of the Act, 11 U.S.C.A. § 45 as an ordinary voluntary bankrupt? The majority opinion says: "If there is no substantial equity, actual or potential, above the mortgage debt reasonably to be saved, a sale of the farm may be ordered, defeating of course rehabilitation, but the adjudication would stand and administration in bankruptcy continue"; but it does not say whether the administration should continue under subsection (s) or as in ordinary bankruptcy. The distinction is important, as will appear from the legal requirements of administration.

It is fundamental that adjudication fixes the status both of the bankrupt and of his property as of the date when the petition for adjudication was filed. An ordinary adjudication divests rights of the bankrupt and fixes rights of creditors, but under subsection (s), it leaves the substantive rights of bankrupt and creditors unimpaired, and provides a procedure for the enforcement of both. The distinction be-

tween the latter procedure and that in ordinary bankruptcy is, from the debtor's point of view, very marked. When the petition is not filed in good faith, fairness, as well as the statute, requires the proceedings to be dismissed, rather than to hold the petitioner as an ordinary bankrupt, and, denying a stay, to sell his property without any equity of redemption. Sheets v. Livy, 4 Cir., 99 F.2d 917.

Recurring to the real question at issue, the majority opinion says that Section 75, 11 U.S.C.A. § 203 nowhere mentions initial good faith as a prerequisite to invoking subsection (s). As to this, the note to Wright v. Vinton Branch, 300 U.S. 440, at page 462, 57 S.Ct. 556, at page 562, 81 L. Ed. 736, 112 A.L.R. 1455, seems to me to be ample authority. It elaborates upon the construction of the act in the body of the opinion. Apparently the note has the full sanction of the court, and, in addition to what I have previously quoted, it says: "It must be assumed that the situation of the present debtor was not beyond all reasonable hope of rehabilitation, else he could not have qualified to file his petition at the outset." That is, he could not have filed his original petition, amended under subsection (s).

The holding which seems to me to be clearly untenable is that an amendment, not of the averments but of the prayer of the petition, supplies a constituent element essential to confer the additional jurisdiction for relief of debtors which was the primary object of the original petition. Having made good faith essential to the filing of the original petition, it was unnecessary to repeat the requirement in the provision for the amendment. Referring to the petition, an amendment of which is the subject of our disagreement, the statute provides as follows: "Upon the filing of such a petition or answer the judge shall enter an order either approving it as properly filed under this section, if satisfied that such petition or answer complies with this section and has been filed in good faith, or dismissing it." 11 U.S.C.A. 202(a).

The above quoted sentence is from section 74(a), which applies to any person, except a corporation, seeking a composition or extension of his debts. Appellant is a person and not a corporation; therefore, it includes him; but he belongs to a particular class of persons, which is further dealt with in section 75. He is a farmer, and when the latter seeks a com-

position or extension of his debts, additional jurisdiction is conferred on the bankruptcy court, but the general requirement that the petition must be filed in good faith is not relaxed. This is put beyond doubt by subsection (i) 11 U.S.C.A. § 203(i), which provides: "The court shall confirm the proposal if satisfied that (1) it includes an equitable and feasible method of liquidation for secured creditors and of financial rehabilitation for the farmer; (2) it is for the best interests of all creditors; and (3) the offer and its acceptance are in good faith, and have not been made or procured except as herein provided, or by any means, promises, or acts herein forbidden. In applications for extensions the court shall require proof from each creditor filing a claim that such claim is free from usury as defined by the laws of the place where the debt is contracted."

When these statutory provisions are rounded out by the constitutional construction of section 75(s) in Wright v. Vinton Branch, supra, and particularly by note 6 to the opinion of the court in that case, the court below was fully warranted in its dismissal of the proceeding, because there was no hope of rehabilitation and the amended petition was not filed in good faith.

Merely as a person, a farmer may file a petition under section 74, 11 U.S.C.A. § 202, seeking a composition or extension of his debts; he may amend it by alleging that he is a farmer and bring the proceeding within the additional jurisdiction granted under section 75; and, failing to reach an agreement with his creditors, he may amend the prayer of his petition and ask to be adjudged a bankrupt under section 75(s), wherein still further powers are given to the bankruptcy court. The statute declares that these are grants of jurisdiction in addition to those theretofore possessed by the bankruptcy courts. 11 U.S. C.A. 201 (Section 73). The judicial power of the United States having the capacity to receive this jurisdiction from the Congress, the bankruptcy courts may exercise it if a person of the class designated seeks to invoke it by proper petition filed in good faith.

No good faith is required in ordinary bankruptcy; the debtor's unexempt property is vested in a trustee for the benefit of his creditors; he is discharged from his provable debts; and nothing further is expected of him with respect to his former

indebtedness; but sections 74 and 75 are intended to compose the debts and rehabilitate the debtor, either with or without an adjudication. In the latter instance, in the absence of good faith or the hope of rehabilitation, the proceeding is futile, and the law will not do an idle thing, especially since it will not help the debtor, and will hinder or delay the creditors. Sections 73, 74, and 75 are in one act, were passed at the same time (47 Stat. 1467, 1470), and should be construed together as the Congress was dealing with the whole subject at the same time, as indicated in 75(r), 11 U.S.C.A. § 203(r), which includes section 74 in its definition of a farmer.

The status of the debtor is not changed upon the amendment of his petition and his adjudication in bankruptcy under section 75(s). This is shown by section 75 (n), which provides that upon the filing of the petition the debtor-farmer subjects himself and his property to the exclusive jurisdiction of the court, and that such jurisdiction shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition or answer was filed. Therefore, the filing of the amended petition asking to be adjudged a bankrupt did not take away the power of the court to dismiss the petition (if not filed in good faith) expressly granted under section 74(a) and impliedly brought forward into section 75 by paragraph (i) of the latter section.

Notice to creditors is not necessary before dismissal of the original or amended petition. The statute does not require it, because the jurisdiction being exercised is primarily for the relief of debtors. Herein is another difference between the two procedures. The procedure in ordinary bankruptcy, where the rights of creditors are considered first, is incompatible in many respects with the beneficent procedure in recent legislation accorded distressed debtors. The basis for a contrary view may be found in the contention that, while the court might have dismissed the original petition herein without notice to creditors, it did not do so, but approved the same, and that the order of approval is res judicata. This contention readily gives way upon examination. First, the approval was upon the ex parte application of appellant, who did not file the petition or amendment thereto in good faith and may not complain of its dismissal. Second, no one was prejudiced by the dismissal, not even appellant,

because, in the absence of good faith or hope of rehabilitation, he is not entitled to a stay, or to retention of possession of his property after adjudication, or to an equity of redemption after a sale thereof, or to the other benefits of the liberal legislation intended for the relief of debtors in an economic emergency. Third, the bankruptcy court is always open; it has no terms fixed by law, and may review an order of this kind at any time before the proceeding is finally closed.

We have seen that every individual seeking a composition with creditors must file a petition in good faith or the court has power to dismiss it, and should do so under section 74 (a), without notice to creditors. What reason can be urged for exempting a farmer from this requirement? Upon what principle of justice should a farmer who has no hope of rehabilitation be permitted to delay or hinder creditors with a sham proceeding for composition or extension of his debts? Good faith and hope of rehabilitation are not unusual requirements, and it is inconceivable that the Congress intended a discrimination in this respect when it was dealing with farmers and other individuals at the same time and in the same act: H.R.No.14359, for the relief of debtors. 47 Stat. 1467, 11 U.S.C.A. § 201 et seq. Therefore, the only reasonable construction of the act is that a farmer is a person entitled to file a petition under either section 74 or 75, and a petition under either section may be dismissed for lack of good faith. This view is confirmed by subsection (i) of section 75, which requires confirmation of the proposal by the court if "the offer and its acceptance are in good faith, and have not been made or procured except as herein provided, or by any means, promises, or acts herein forbidden." This statute itself is enough to show the intent of Congress, even if a farmer is not a person entitled to file a petition under section 74 (a) which may be dismissed by the court, for want of good faith, without notice to creditors.

Since the appellant has given no indication of a desire to become an ordinary bankrupt, and since the ruling of the majority is that neither good faith nor hope of rehabilitation is essential to an adjudication upon the amended petition, which entitles him to invoke the court's emergency jurisdiction intended especially for the relief of debtors, I dissent, with deference, from the order overruling the petition for a rehearing.